Estate of Francis H. Shields, Deceased, The Pennsylvania Company for Insurance on Lives and Granting Annuities and Greta Carter Shields, Executors v. Commissioner.
Estate of Shields v. Commissioner
Docket No. 110167.
United States Tax Court
1943 Tax Ct. Memo LEXIS 456; 1 T.C.M. (CCH) 585; T.C.M. (RIA) 43074; February 11, 1943
*456 Joseph A. Lamorelle, Esq., 2301 Packard Bldg., Philadelphia, Pa., for the petitioners. Lewis S. Pendleton, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: The Commissioner determined a deficiency of $823.22 in estate tax. That determination was premised principally upon the inclusion of the proceeds of an insurance policy in the gross estate of decedent. The respondent excluded from the gross estate the income collected during the optional period. Petitioners contend that the proceeds of the insurance policy, which were paid to decedent's wife as beneficiary, should not be included in the gross estate and, therefore, they overpaid the estate tax in the amount of $146.70 due to their inclusion of the income collected during the optional period in the original return. No other adjustment has been questioned by petitioners. The facts have all been stipulated and as stipulated are adopted as our findings of fact. Only those deemed necessary to an understanding of the issue will be set forth herein. [The Facts] Francis H. Shields, hereinafter referred to as decedent, died on September 14, 1939. The Federal estate tax return for decedent's estate was filed with the *457 collector of internal revenue for the first district of Pennsylvania on December 4, 1940. The tax shown thereon was paid at that time. Petitioner was an employee of the Pennsylvania Company continuously from August 1, 1923, until the date of his death and his salary was at all times commensurate with the responsibilities assumed and the services rendered by him to such company. On December 1, 1916, the Germania Life Insurance Company of New York, now the Guardian Life Insurance Company of America, hereinafter referred to as the Insurance Company, issued an Employees Group Policy of Yearly Renewable Term Insurance to the Pennsylvania Company for Insurance on Lives and Granting Annuities, hereinafter referred to as the Pennsylvania Company. This policy insured the lives of all persons then employed by the Pennsylvania Company except temporary employees and those who could not pass a satisfactory physical examination. Employees insured under the group policies issued up to February, 1938, made individual applications for such insurance. Subsequent thereto applications therefor were made only by the Pennsylvania Company. From the time of the issuance of the group policy on November *458 1, 1916, up to and including November 30, 1939, the Pennsylvania Company has reported each month to the Insurance Company changes in the personnel and status of its employees, giving necessary information when additional or new insurance was to be effected under the policy and also stating the insurance to be discontinued thereunder, in order to enable the Insurance Company to determine each annual premium payable on the group policy. The premium was the aggregate of the rates applied to each employee. The amount of insurance placed on the life of each employee was the same as his yearly compensation up to but not exceeding $10,000. Shortly after the decedent entered the employ of the Pennsylvania Company his life was insured for $5,000. Such insurance was increased from time to time as decedent's annual salary was increased until on November 30, 1928, and at all times subsequent thereto up to and including the time of his death, the amount of such insurance was $10,000. Under the policy the employee whose life was insured has the right to designate the beneficiary to receive the proceeds of his insurance and to change the beneficiary at any time. The group policy was entitled to *459 participate annually in the distribution of the surplus of the Insurance Company "as ascertained and apportioned with respect to the individual insurance hereunder." Any dividends declared were to be paid in cash or be applied toward the payment of premiums. Decedent, in his application for the insurance, assigned to the Pennsylvania Company all of his rights to dividends which might accrue under such insurance and to any surrender values which might become available thereunder. The policy provides that the insurance upon the life of any employee shall continue only so long as the employee remains in the service of the Pennsylvania Company. In the event of termination of the employment the person insured under the policy can upon written notice within a certain time of the termination of employment, procure insurance without the requirement of a new medical examination. The premium on the insurance issued to the individual severing connection with the Pennsylvania Company will be computed upon the then attained age of the employee. Only an amount not in excess of the insurance under the group policy can be so procured. The original group policy has been renewed yearly and is still *460 in full force and effect. The policy has been in the exclusive possession of the Pennsylvania Company from the date of its issue up to and including the present time. All of the premiums on the life insurance under the group policy have been paid by the Pennsylvania Company. The premiums paid by the Pennsylvania Company have been claimed as deductions in its Federal income tax returns. The premiums paid upon the life of decedent have not been repaid to the Pennsylvania Company by decedent or anyone else on his behalf. (Nor has any other employee reimbursed the Pennsylvania Company for such insurance upon his own life.) None of the premiums were ever deducted from any salary or compensation payable to decedent by the Pennsylvania Company. Also, none of the premiums nor any part thereof were paid by the Pennsylvania Company in lieu of salary or compensation to which decedent was entitled. After the death of decedent, the Insurance Company paid to Greta Carter Shields, widow of decedent, the amount of $10,000. This was paid to her as beneficiary, she having been so named in the application signed by decedent. The policy provided as follows: Whenever before default in the payment of *461 premium for insurance hereunder on the life of an employee the Company receives due proof that such employee has become wholly and incurably disabled by bodily injury or disease not due to any cause or condition existing when this policy was delivered or such employee's life became insured under this policy, or to military or naval service in time of war, so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit and that such disability has existed continuously for not less than sixty days prior to furnishing such proof, then no further payment of premiums shall be required under this policy as to such employee except as stated under 'Recovery from Disability,' and the Company will pay to such insured employee one-twentieth of the amount for which such employee's life is insured under this policy and will make like payments annually thereafter on the anniversary of the first payment until twenty such annual payments in all shall have been made. These payments shall be in lieu of any other payments or benefits provided for in this contract as to such employee. If such employee shall die *462 before all of the said twenty instalments have been fully paid, then the remaining instalment payments may be continued to the beneficiary designated by such employee, or may be commuted at the rate of three per centum interest compound anually and paid in one sum to such beneficiary. Although the parties did not stipulate the amount of insurance payable to beneficiaries other than decedent's estate, we will assume that the amount must have been over $40,000 since the parties make no point of such fact. [Opinion] The sole issue is whether or not the proceeds from the group insurance policy which decedent's wife received as beneficiary should have been included in the gross estate. Section 811 (g), Internal Revenue Code (1939) provides as follows: SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * * * *
(g) Proceeds of Life Insurance. - To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent *463 upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life. Regulations 105, section 81.25 provides in regard to the italicized words above as follows: * * * Insurance receivable by beneficiaries other than the estate is considered to have been taken out by the decedent where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired, whether or not he made the application. Such insurance is not considered to have been so taken out, even though the application was made by the decedent, if no part of the premiums or other consideration was paid either directly or indirectly by him. * * * Respondent contends that the premiums constituted additional compensation to decedent or that the payments were gifts to decedent by the Pennsylvania Company and in either event the insurance was taken out by the decedent upon his own life. He cites Brown v. Commissioner, 95 Fed. (2d) 184; Igleheart, et al. v. Commissioner, 77 Fed. (2d) 704, *464 affirming 28 B.T.A. 888; First National Bank & Trust Co. of Minneapolis, 39 B.T.A. 134; and N. Loring Danforth, 18 B.T.A. 1221. Petitioners contend that the premiums were not paid by decedent directly or indirectly. They cite and place their chief reliance upon Bessie M. Ballinger, Executrix, 23 B.T.A. 1312, (cited with approval in M. W. Dobrzensky, 34 B.T.A. 305. Section 302 (g) of the Revenue Act of 1924 was there construed. The wording of that section is precisely the same as that in section 811 (g), supra. In the Ballinger case the facts were stated as follows: Group policy No. 1458, issued December 21, 1922, by the Prudential Insurance Company; face amount of policy $5,000; group insurance policy taken out by the Ballinger Company covering its employees; beneficiary "Bessie M. Ballinger, Wife;" policy provides that "If there be no beneficiary living at the death of said employee (Walter F. Ballinger) the amount of insurance shall be paid to the executors, administrators or assigns of said employee;" policy allowed *465 employee to change beneficiary. In our opinion we stated: With respect to the group policy, it appears that the insurance was taken out by the Ballinger Company for its employees, and was not taken out by decedent upon his own life. The statute covers amounts received "by the executor as insurance under policies taken out by decedent upon his own life." and the excess over $40,000 received by all other beneficiaries from insurance "taken out by decedent upon his own life." Since the statute fails to provide for the inclusion of the proceeds of insurance policies taken out by others on the decedent's life, it would seem that Congress did not intend to include such proceeds in computing a decedent's gross estate. As to the group policy, therefore, we hold that the proceeds should be excluded from decedent's gross estate, because such policy was not taken out by decedent upon his own life. There appears to be no material difference between the operative facts of that case and those in the instant case. Upon authority of the Ballinger case, we sustain that contention of the petitioners. Cf. Estate of Edward Doerken, 46 B.T.A. 809; Old Colony Trust Co., Executor, 39 B.T.A. 871; *466 Estate of Harry W. Hahn, 38 B.T.A. 3. See Estate of John E. Cain, Sr., 43 B.T.A. 1133, 1139. All of the cases cited by respondent and set forth above are clearly distinguishable on the facts. From our holding it follows that petitioner has overpaid the estate tax since there was included in the gross estate income collected during the optional period and which the parties agree should not have been so included. Decision will be entered under Rule 50.