J. Carlton Ward, Jr. v. Commissioner.
Ward v. Commissioner
Docket No. 7302.
United States Tax Court
1945 Tax Ct. Memo LEXIS 27; 4 T.C.M. (CCH) 1037; T.C.M. (RIA) 45348; November 29, 1945
Roswell Magill, Esq., and Roswell L. Gilpatric, Esq., 15 Broad St., New York 5, N. Y., for the petitioner. Charles P. Reilly, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves a deficiency in Federal income tax for the year 1941. Deficiency was determined in the amount of $12,932.81. Two minor issues have been eliminated from our consideration by stipulation and the results of such stipulation will be reflected in decision to be entered under Rule 50. The only question remaining, *28 therefore, is whether the petitioner is taxable upon the amount paid by his employer for a single premium annuity policy which was in the taxable year received by him. The major portion of the facts have been stipulated. Such stipulation is adopted by us by reference and we find the facts therein set forth. They will be recited herein only so far as necessary for examination of the question, and in connection with statement of other facts found from evidence adduced. [The Facts] The petitioner filed his return, on the cash basis, for the taxable year 1941, with the collector for the district of Connecticut, at Hartford, Connecticut. He has been since 1940 president of Fairchild Engine and Airplane Corporation (hereinafter sometimes referred to as Fairchild). In December 1941 Fairchild purchased for an aggregated premium of $ $20,000 a deferred refund annuity policy; and delivered such policy to the petitioner in 1941 as compensation for services. Although the minutes of the corporation's directors' meeting, under date of December 24, 1941, with reference to the purchase of the annuity policy, recite that the chairman, in stating the purpose of the meeting, referred to the *29 policy to be purchased as to be nonassignable and to have no cash surrender value, the resolution adopted providing for the purchase of the annuity does not designate whether it should be nonassignables or have no cash surrender value, but provides $ that the annuity is to be in such form as the chairman of the board or the treasurer, after consultation with counsel, shall determine. The policy purchased was assignable, though it had no cash surrender value; and it was not until May 3, 1945, that the policy was reformed to make it nonassignable. This was after the filing of the petition herein on March 7, 1945. The petitioner was not by Fairchild given the option of receiving cash or the annuity policy. The $20,000 premium was paid directly by Fairchild to the insurance company issuing the policy and the petitioner did not receive the money. The petitioner was 48 years of age in December 1941, when the annuity policy was purchased by Fairchild. The policy provided, inter alia, for the payment to the petitioner of monthly payments of $133.33 each month beginning at age 60 and continuing throughout his life, and in case of his death on or after the due date of the first annuity payment, *30 if the sum of the annuity payments which have become due under the contract is less than the consideration paid for the policy, the insurance company will continue payment of the annuity as the payments become due to the annuitant's wife, until the total amount of annuity payments made equals the consideration. The policy also provides that in case petitioner should die before the due date of the first annuity payment, the consideration will be paid to the beneficiary (petitioner's wife) in 120 equal installments as each installment becomes due. The right to change the beneficiary is reserved to the annuitant. Under the above facts did the respondent err in taxing to petitioner in 1941 the amount of $20,000, paid by Fairchild for the policy made to, and delivered to the petitioner? Although the petitioner attempts to distinguish, among other cases cited by the respondent, Renton K. Brodie, 1 T.C. 275, and Oberwinder v. Commissioner, 147 Fed. (2d) 255, in our opinion, in those cases this question has been fairly and fully considered and resolved against petitioner's contentions. In both cases the facts are parallel in general to the pertinent facts herein, *31 and annuity contracts were delivered by way of compensation; yet, it was held in each that the amount paid by the employer for the annuity contracts constituted taxable income to the petitioner. The contract was nonassignable in the Brodie case, while the Oberwinder contract, and that here involved, were assignable (though in this case in a later year modified in that respect). In the Brodie case the petitioner had no option to receive cash instead of the annuity. The Oberwinder case contains no statement in that respect. The petitioner herein urges that he should not be taxed because he would receive nothing $ under the annuity $ contract until he reached the age of 60 years, he being at the time of the issuance of the contract 48 years of age. In the Oberwinder case the same was true, that is, the annuity policy provided that the petitioner should receive monthly payments beginning when he reached the age of 60 years, he being at the date of the purchase of the policy 52 years of age. In the Brodie case, payments under the policy were to start on the annuitant's seventieth birthday, and the record therein discloses that on the date of application for the policy petitioner was 51 *32 years of age. Section 22(b)(2) of the Internal Revenue Code provides that income from annuity payments in excess of 3 per cent of the consideration paid shall be excluded from gross income until the aggregate amount excluded from gross income equals the aggregate premiums or consideration paid for the annuity; in other words, that up to the amount of the consideration paid the petitioner will not be taxed upon the annuity payments when they start when he reaches the age of 60 years, except to the extent of 3 per cent of the aggregate premiums or consideration paid for the annuity. The petitioner also relies upon Raymond J. Moore, 45 B.T.A. 1073. That case was distinguished in the Brodie case on its facts, we pointing out that there the employer had set up a pension trust and reliance was in the Moore case placed upon section 165 of the Revenue Act of 1936. No such situation appears here. Charles L. Jones, 2 T.C. 924, did not involve the present question. In Richard R. Deupree, 1 T.C. 113, also distinguished by the petitioner, the recipient of the annuity had the option to take cash instead of the consideration paid for *33 the annuity, and such distinction causes us not to rely upon that authority here. We conclude and hold that the Commissioner did not err in including in petitioner's income the $20,000 paid by Fairchild for the annuity contract. Decision will be entered under Rule 50 $