ESTATE OF MICHAEL COLLINO, DECEASED, MORTIMER J. GOODSTEIN, ADMINISTRATOR D. B. N., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46913. Filed February 10, 1956.

*Mortimer J. Goodstein, Esq.,* for the petitioner.
*S. Jarvin Levison, Esq.,* and *Emil Sebetic, Esq.,* for the respondent.

**OPINION.**

HARRON, *Judge:*

*Issue 1.*

The question to be decided is whether insurance in the amount of $61,266.72, which was received by the decedent's mother as the beneficiary of 8 policies of insurance, under which the decedent was the insured, is includible in the decedent's gross estate under the provisions of section 811 (g) (2) of the 1939 Code.[1]

The respondent does not claim that the policies in question were purchased with premiums paid directly or indirectly by the decedent. He concedes that the provisions of section 811 (g) (2) (A) are not involved.

The respondent contends that the insurance proceeds received by Grace Collino are includible in the decedent's gross estate under the provisions of section 811 (g) (2) (B) because the proceeds were paid under policies "with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable alone or in conjunction with any other person." The question to be decided is whether the decedent possessed any of the incidents of ownership in the 8 policies at the time of his death. Under this issue, the petitioner has the burden of proof.

---

[1] SEC. 811. GROSS ESTATE.

(g) PROCEEDS OF LIFE INSURANCE.—

\*       \*       \*       \*       \*       \*       \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other persons. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

The term "incidents of ownership," in section 811 (g) (2) (B), includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, or to revoke an assignment, to pledge the policy for a loan, or to obtain a loan from the insurer against the surrender value of the policy. Regs. 105, sec. 81.27.

The petitioner concedes that the decedent possessed the right to change the beneficiary under the terms of the policies. The right to change the beneficiary is an incident of ownership. Since the decedent possessed that right, it would appear that the proceeds of insurance are brought into the gross estate by the provisions of section 811 (g) (2) (B) which refers to "any of the incidents of ownership." Nevertheless it is petitioner's contention that Grace Collino, rather than the decedent, was intended to be, and in fact was, the true owner of the various incidents of ownership. Petitioner takes the view that intent controls. He relies on *National Metropolitan Bank* v. *United States*, (Ct. Cl.) 87 F. Supp. 773, and *District of Columbia* v. *Wilson*, 216 F. 2d 630.

Upon the record before us, petitioner's contention must be rejected. There is no evidence that the decedent did not possess incidents of ownership of the 8 policies of insurance, all incidents of ownership or some incidents of ownership, in addition to the right to change the beneficiary. Since petitioner's contention presents a problem about intent, petitioner's burden of proof is difficult. Also, petitioner has been unable to locate records which are material to the question to be proved. The difficulties of proving the material facts leave the petitioner in the unfortunate position of making a claim which cannot be supported. There is failure of proof. Neither the petitioner nor the insurer was able to produce copies of the policies. The retained records of the insurer do not reveal any of the terms of the policies other than that they were endowment policies. An employee of the Metropolitan Life Insurance Company testified that all records concerning the policies on the life of Michael Collino issued by his company, of which Grace Collino was the beneficiary, were available until March 1955, but that after that time such records could not be found after a thorough and diligent search. He also testified that he has no personal knowledge or recollection with respect to the issuance of such policies, the premium payments thereon, the incidents of ownership with respect thereto, the possession of any of the privileges exercisable in such policies, or any other personal information concerning such policies. The consequences of the failure of proof must be borne by the petitioner. *Burnet* v. *Houston*, 283 U. S. 223. It must be concluded that the petitioner has failed to establish that Grace Collino was the true owner of the policies, and that the decedent did not possess, at his death, any of the incidents of ownership of the 8 policies.

The facts in the cases on which petitioner relies make them distinguishable from this proceeding, in our opinion. In the *National Metropolitan Bank* case, *supra*, the decedent was named in two policies of insurance on her life as the owner of the various incidents of ownership. The policies were taken out on her son's initiative. The son paid the premiums, he was the named beneficiary, and, for the most part, he retained possession of the policies. The evidence established that the insurance salesman, in filling out the applications, had inserted the word "insured," rather than the son's name, in the blank space reserving the incidents of ownership, and that the agent, in so doing, had acted on "his own initiative, for personal reasons and to avoid complications that might have cost him the sale." The court concluded from the evidence that the beneficiary, rather than the insured, was intended to be and was the true owner of the policies, and that the proceeds were not includible in the decedent's gross estate under section 811 (g) (2) (B). In reaching its conclusion, the court said (87 F. Supp. at p. 775) :

We think that plaintiffs are entitled to recover. The unauthorized answers inserted in a life-insurance application by an insurance salesman, upon his own initiative, for his own personal reasons, will not serve to invest the insured with the "incidents of ownership" when there is no other substantial evidence of ownership or interest on the part of the insured.

In *District of Columbia* v. *Wilson, supra*, the decedent, the registered owner of certain bonds, was held not to be the owner of the bonds for the purposes of the District of Columbia estate tax. The bonds had been purchased by the decedent's sister, who survived the decedent. A written collateral agreement established that the decedent was given only a life interest in the bonds. If he survived his sister, he was also given the principal of the bonds, which would be treated as an advance on certain testamentary bequests. It was held that the registered ownership of the bonds in the decedent's name was not controlling, and that, under the terms of the collateral agreement, the decedent possessed only a life estate in the property.

The petitioner has the burden of proving that Grace Collino, rather than the decedent, was the real owner of the incidents of ownership in the policies. This is a question of fact, and the circumstance that the decedent did not have possession of the policies is not determinative. *Fried* v. *Granger*, 105 F. Supp. 564, affd. 202 F. 2d 150. The petitioner has not established facts similar to those which were present in the cases upon which he relies. There is no evidence that the decedent was given the incidents of ownership in the policies through inadvertence or error on the part of the insurance agent or any other person. Petitioner has not established that the decedent and his mother intended that the decedent was not to possess the various in-

cidents of ownership in the policies. The evidence is meager. Nevertheless, there is no proof that the original terms of the policies were modified to vest all of the incidents of ownership in Grace Collino, or that they did not correctly set forth the understanding which existed between the decedent and Grace Collino. It must be concluded that petitioner has failed to establish that Grace Collino was the true owner of the incidents of ownership of the policies, and that the decedent possessed only a nominal interest in the incidents of ownership. It is held that the amount of $61,266.72 was properly included by the Commissioner in the decedent's gross estate under the provisions of section 811 (g) (2) (B).

### Issue 2.

The Federal estate tax return was filed by the successor to the first appointed administratrix after the time prescribed for the filing. The question to be decided is whether the failure to file the return within the prescribed time was due to reasonable cause and was not due to willful neglect. The petitioner contends that the 25 per cent addition to the estate tax which the Commissioner has determined under the provisions of section 3612 (d) (1) of the 1939 Code[2] should be set aside.

The facts established by the evidence which pertain to this issue have been set forth fully and it is unnecessary to restate them here. The widow of the decedent was the original administratrix. She had had no experience in handling estate matters and yet she was appointed to administer an estate, the determination and organization of which was complicated by claims of the decedent's mother which presented questions of fact and law. These difficulties were greatly increased by the lack of adequate and complete records due to the decedent's failings, and to confusion in the records. Also, Helen had no knowledge of certain legal restrictions relating to the estate while it was in administration.

The Court is convinced, upon consideration of all of the facts and circumstances, that Helen was not wilfully negligent in failing to

---

[2] (d) ADDITIONS TO TAX.—

(1) FAILURE TO FILE RETURN.—In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax: *Provided,* That in the case of a failure to make and file a return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate.

file the Federal estate tax return within the time required by law, or in assembling all of the assets which belonged to the estate. Her lack of experience made her less than competent to serve as administratrix. However, she engaged a reputable and competent attorney to advise her, and she consulted another attorney who had served the Collino family for over 15 years. She asked Cappa to take care of everything in connection with the estate. It is evident that Cappa undertook to do so with ordinary and reasonable care, and that during the period in which he represented the administratrix he succeeded in assembling and accounting for substantially all of the gross estate of the decedent except for some assets having a comparatively small value which were discovered after the accounting of November 16, 1948, was filed in the Surrogate's Court. The accounting involved some disputes which were not judicially determined until January 24, 1955. Under all of the circumstances, considerable time was required to ascertain the extent of the decedent's estate.

We are satisfied that Cappa had a bona fide belief that the gross estate of the decedent was less than the then statutory exemption, that the filing of a Federal return was not required, and that he so advised the administratrix. When a successor administrator was appointed and an estate tax return was filed, which reported a relatively small amount of after-discovered assets, it is clear that Cappa's opinion was made in good faith and was reasonable. Although the respondent determined that the gross estate was considerably more than $60,000, he has now receded from his original determination to a substantial extent.

Under all of the circumstances, we are unable to find that the delay in the filing of the estate tax return was due to "willful neglect." It is held that it was not. It is held, further, from the entire evidence, including the stipulations and oral testimony, that the failure to file the return within the time prescribed by law was due to a reasonable cause. Respondent's imposition of the delinquency penalty is reversed. See *Reliance Factoring Corp.*, 15 T. C. 604, 609; *Portable Industries, Inc.*, 24 T. C. 571; *Fairfax Mutual Wood Products Co.*, 5 T. C. 1279, 1283; *C. R. Lindback Foundation*, 4 T. C. 652, affd. 150 F. 2d 986; *Cristina deBourbon Patino*, 13 T. C. 816, 826, affd. 186 F. 2d 962; and *Haywood Lumber & Mining Co.* v. *Commissioner*, 178 F. 2d 769.

The Commissioner concedes that the estate is entitled to additional deductions the amounts of which are to be computed by the parties under Rule 50.

*Decision will be entered under Rule 50.*