Estate of Corra Baer, Deceased, Carlos A. Baer, Co-executor v. Commissioner.
Estate of Baer v. Commissioner
Docket No. 59769.
United States Tax Court
T.C. Memo 1957-211; 1957 Tax Ct. Memo LEXIS 39; 16 T.C.M. (CCH) 949; T.C.M. (RIA) 57211; November 7, 1957
*39 Gladstone P. Lillicrapp, Esq., 708-709 Northampton National Bank Building, Easton, Pa., for the petitioner. Joseph N. Ingolia, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined additions to tax of $3,255.70 and $4,221.02 for the years 1944 and 1945, for failure to file gift tax returns within the period required by statute. The sole question presented is whether such failure to file the returns within the prescribed period was due to reasonable cause. Findings of Fact Petitioner is the estate of Corra Baer, who died a resident of Lehighton, Carbon County, Pennsylvania, on or about January 27, 1948. Carlos A. Baer, a son, and Genevieve Baer Smith, a daughter, are the duly qualified co-executors of her estate. Corra Baer was the mother of six children, and for some undisclosed period prior to her death, had been a widow. At the time of her death, she was approaching her 82nd birthday, having been born on March 2, 1866. She was the owner of the major part of the stock of the Baer Company, which company owned and operated what might be termed the family business. In 1943 differences had arisen among *40 her children with respect to the company, and desiring to work out an arrangement which would keep peace in the family, she consulted Irving S. Amrhein. Amrhein had been in the securities business in Bethlehem, Pennsylvania, for approximately thirty-five years, and had been advising with Corra Baer on her investments since 1929. He had also acted as investment counsel for other members of the family. It was his practice to call on the decedent at her residence about twice a month, and sometimes weekly, and it was on such a call in 1943 that she discussed with him the family problem as it related to the Baer Company and her children. At some time prior to January 1, 1944, she decided to transfer some, if not all, of her stock in the Baer Company to trustees. Corra Baer's formal education had been limited. She knew little, if anything, about trusts or law, and she asked Amrhein about a lawyer. Amrhein suggested John H. Diefenderfer, who lived in Bethlehem and practiced law in both Bethlehem and Allentown, which are located in adjoining counties. Diefenderfer later became a judge in that area, but died several years prior to the trial herein. Diefenderfer accompanied Amrhein on *41 a visit to Corra Baer's home and was employed by her to do the legal work connected with the trust, which employment included the responsibility for looking after tax problems attendant upon the creation of tax trust or subsequent transfers to the trust. He was to set up a trust and was to advise Amrhein as to the initial amount which might be transferred to trust without incurring tax on such transfers. Amrhein was to select securities which would approximate that amount and have them transferred to the trust. He was to keep Diefenderfer advised as to the value at the time of transfer of the securities transferred to the trust. Pursuant to his employment, Diefenderfer drew up a trust instrument, whereunder Corra Baer was to transfer to Carlos Baer and Genevieve Baer Smith, as trustees, 1,462 shares of common stock of the Baer Company, stated as having a market value of $16,082; other securities to the value of $13,900; and cash of $18, or a total of $30,000. The trust instrument was executed by Corra Baer, Carlos Baer and Genevieve Baer Smith under date of January 1, 1944. Diefenderfer had advised Amrhein that $3,000 for each child and an additional amount, because "it was the first *42 transfer," could be transferred tax free, and it was his understanding that $30,000, the amount at which he valued the securities in the initial transfer, was within the permitted amount. Diefenderfer was also to advise Amrhein as to the amounts which could be transferred tax free in succeeding years, which amounts Amrhein understood would be less than the amounts of the original transfers. Under the trust instrument, the net balance of the trust income, after the payment of expenses of investment, taxes, assessments, insurance and other necessary and proper charges, was to be paid to Corra Baer in at least semiannual installments for as long as she should live. After the death of Corra Baer the income was to be paid in equal shares to her six children, Genevieve Baer Smith, Carlos Baer, Mrs. Frederick Spogen, Rose L. Peters, C. Elizabeth Tracy, and Eugene W. Baer, Jr. During the life of the donor the stock of the Baer Company was not to be sold, but was to remain intact for the purpose of preserving the business. Operation of the company was to be under the direction and control of the trustees. Upon Corra Baer's death, the trustees were to continue the operation of the company *43 so long as the trustees, or the survivor of them, should live, after which other individuals named in the trust instrument were to become trustees. These successor trustees could continue the company, or liquidate the trust and pay over the proceeds to the six children of Corra Baer named in the trust instrument. In arriving at the value stated for the stock of the Baer Company transferred to the trust, Amrhein received information from Carlos Baer and the Baer Company. After arriving at a value therefor, he advised Diefenderfer of the values he had set on all of the securities at the date of transfer. On July 12, 1945, other securities, valued by Amrhein at $56,369.41, plus $778.54 in cash, were transferred to the trust, and under date of July 13, 1945, Amrhein, by letter, advised Diefenderfer of the transfers, attaching to the letter a list of the securities and the values he had set thereon. The letter concluded as follows: "Please arrange to make payment of the Pennsylvania 'Gift Tax' on this amount and any Federal taxes if we are liable. "Your prompt attention to this matter will be appreciated." There was a postscript, stating that a New York State transfer tax of $46.23 *44 and a Federal transfer tax of $26.01 had been paid. Under date of October 18, 1945, Corra Baer and the trustees executed a supplemental agreement, wherein the provision relating to the distribution of the trust income was revised to provide that such trust income should not be paid to Corra Baer during her lifetime, but from the date of the supplemental agreement, should be paid, share and share alike, in semiannual installments to her six children named above. No gift tax return by or on behalf of Corra Baer for either of the years 1944 or 1945 was filed within the time prescribed by the statute for the filing of such a return. On July 21, 1952, gift tax returns for the said years, which had been executed on July 17, 1952, by Carlos Baer and Genevieve Baer Smith, as executors, were received at the office of the internal revenue agent in charge at Philadelphia. The returns were received by the director of internal revenue at Scranton, Pennsylvania, on November 13, 1953, the manner, method, or occasion of their transfer not being shown. The 1944 return as filed reported total gifts of $30,000. Exclusions of $3,000 "for each donee" in a total amount of $18,000 and a specific exemption *45 of $12,000 were claimed, leaving the amount of net gifts for the year as none. On the 1945 return, total gifts of $57,147.95 were reported, $778.54 of which was in cash, with the remaining $56,369.41 representing the reported value of securities. As on the 1944 return, six $3,000 exclusions for the six donees were claimed, which, with a claimed specific exemption of $18,000, left $21,147.95 as the reported amount of net gifts for the year. The tax thereon was shown as $1,320.53. Attached to the 1945 return was a letter addressed to the collector of internal revenue, at Scranton, Pennslyvania, and signed by Carlos A. Baer and Genevieve B. Smith, as trustees, which read as follows: "Form 709 for the year 1944 was not filed on time for the reason that we were of the opinion that no gift tax return was due since there was no tax liability for that year. "We were of the opinion that Form 709 for the year 1945 was filed since the Attorney was instructed on July 13, 1945 to arrange and file gift tax returns and make payment of any tax which was due." On some undisclosed date, the respondent determined that the total gifts in 1944 were in the amount of $118,084.72, instead of $30,000, *46 as reported, and for 1945, in the amount of $99,703.67, instead of $57,147.95, as reported. By reason of this increase in the total gifts, the gift tax for 1944 was determined as $13,022.79 and for 1945 as $16,884.07. In making the determination for 1944, the $3,000 exclusion for each of the six gifts as claimed on the return was disallowed and the specific exemption was increased from $12,000 to $30,000. For 1945, all claimed exclusions or exemptions were disallowed. Notices that the gift tax deficiencies had been assessed and demands for payment thereof were issued by the district director of internal revenue under date of June 8, 1955. [1]
*47 Under date of July 1, 1955, the respondent mailed his notice to the estate of Corra Baer, Carlos Baer, co-executor, advising that a "delinquency penalty" of $3,255.70 for 1944 and a similar "penalty" of $4,221.02 for 1945, for failure to file gift tax returns for those years within the time prescribed by statute, had been determined. The failure on the part of Corra Baer to file gift tax returns for 1944 and 1945 within the time prescribed by law was due to reasonable cause and not to willful neglect. Opinion By section 3612(d) of the Internal Revenue Code of 1939, it is provided that in the event of the failure to file a return within the time prescribed by law, the Commissioner is required to add to the tax 25 per centum of its amount, except that if a return is filed thereafter and it is shown that the failure to file within the time prescribed "was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax." Corra Baer made gifts to trust in 1944 and 1945, but did not file a gift tax return for either year, within the time prescribed. But in *48 1952, several years after her death, gift tax returns for the said years were filed by the executors of her estate. The estate is the petitioner here, and it is claimed that the failure to file within the prescribed time was due to reasonable cause and not to willful neglect, and the determination of additions to tax by the respondent was in error. We think there was reasonable cause, and have so found. Corra Baer herself did not know and made no pretense of knowing anything about the problems attendant upon the creation of the trust or the transfers thereto, and, as a consequence, she employed and depended upon Amrhein and Diefenderfer to advise and act for her. Amrhein had been her investment counsel since 1929, and after discussing with him the idea of setting up the trust, she asked him about a lawyer. Amrhein suggested Diefenderfer, who was a practicing lawyer in the area, with offices in nearby Bethlehem and in Allentown. Diefenderfer went with Amrhein to see Corra, and was employed. He was to do the legal work, while Amrhein was to choose the securities. Diefenderfer was to advise Amrhein as to the amount of the gifts that could be made tax free, and Amrhein was to advise *49 Diefenderfer as to the securities transferred and the values thereof as of the dates of transfer, to the end that returns of gifts should be made as indicated thereby. It is the contention of the respondent that the record does not show that Diefenderfer was employed to file gift tax returns, or that he was an expert in tax matters, and such being the case, that the proof fails to show that the failure of Corra Baer to file the returns within the time prescribed by the statute was due to reasonable cause. We are satisfied from the evidence that Diefenderfer's employment comprehended the handling of any gift tax matters which might arise, including the preparation of gift tax returns, and we have so found. Diefenderfer was established in the practice of the law and his standing as a lawyer in his community was sufficiently high to result in his subsequent election or appointment, as the case might have been, to a judgeship in that area. Amrhein testified specifically that Diefenderfer was to advise him as to the amount of gifts which could be made without a liability for tax, and he was to advise Diefenderfer of the securities which were transferred and the value thereof as of the *50 dates of transfer. Certainly there would have been no occasion for such continued reporting between the two if Diefenderfer's employment had been limited to the preparing of the trust instrument, as the respondent contends. Furthermore, the letter Amrhein wrote to Diefenderfer, contemporaneously with or immediately after the making of the 1945 gifts, supports the conclusion that Diefenderfer's employment did include the responsibility for gift tax returns where required. In the circumstances, it was reasonable for Corra Baer to place reliance on Amrhein and Diefenderfer and to believe that she had taken the necessary steps and precautions to assure the doing of those things essential to or attendant upon the making of the gifts, including the preparation and filing of the gift tax returns if required. Haywood Lumber & Mining Co. v. Commissioner, 178 Fed. (2d) 769; Estate of Michael Collino, 25 T.C. 1026; Portable Industries, Inc., 24 T.C. 571; O. Falk's Department Store, Inc., 20 T.C. 56; Safety Tube Corporation, 8 T.C. 757, affd. 168 Fed. (2d) 787; and Estate of Daniel A. McColgan, 10 B.T.A. 958. *51 In keeping with our finding above, we accordingly hold that the failure on the part of Corra Baer to file gift tax returns for 1944 and 1945 within the time prescribed by statute was due to reasonable cause and not to willful neglect. Decision will be entered for the petitioner. Footnotes
1. Presumably, the deficiencies in gift tax were assessed pursuant to consents executed on behalf of the Corra Baer estate, since there is no indication that statutory notices of such deficiencies were ever mailed. Beyond the assertion by the respondent on brief that it was later determined that the value of the Baer Company stock which was transferred to trust in 1944 greatly exceeded the value therefor as transmitted by Amrhein to Diefenderfer, there is no indication of record whether the values supplying the basis for the gift tax deficiencies assessed related to all or only some of the securities transferred.↩